UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LYNN STRAYHORN,

        Petitioner,

                                     CASE NO. 2:08-CV-10345
   v.                                JUDGE LAWRENCE P. ZATKOFF
                                     MAGISTRATE JUDGE PAUL J. KOMIVES

RAYMOND BOOKER,

        Respondent.

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     D.    *Confrontation (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
     E.    *Police Testimony Regarding Invocation of Right to Counsel (Claim II)* . . . . . . . . . . . . . . . . . 22
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
     F.    *Ineffective Assistance of Counsel (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
            a.  Failure to Request Accomplice Witness Instruction . . . . . . . . . . . . . . . . . . . . . . . 27
            b.  Failure to Seek Suppression of Petitioner's Statement . . . . . . . . . . . . . . . . . . . . . 29
     G.    *Newly Discovered Evidence of Innocence (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
     H.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 34
         1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
     I.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should grant in part and deny in part a certificate of appealability.   Specifically, the Court should grant a certificate of appealability with respect to petitioner's confrontation claims (Claim I), but should deny a certificate with respect to petitioner's remaining claims.

II.    <u>REPORT</u>:

A.    *Procedural History*

1.    Petitioner Lynn Strayhorn is a state prisoner, currently confined at the Ryan Correctional Facility in Detroit, Michigan.

2.    Petitioner was convicted of second degree murder, MICH. COMP. LAWS § 750.317; armed robbery, MICH. COMP. LAWS § 750.529; assault with intent to rob while armed, MICH. COMP. LAWS § 750.89; possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  On October 29, 2003, he was sentenced to a term of 25-40 years' imprisonment on the murder conviction, 10-20 years' imprisonment each on the armed robbery and assault convictions, and 1-5 years' imprisonment on the felon-in-possession conviction, as well as to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.    DEFENDANT WAS DENIED A FAIR TRIAL BECAUSE THE JURY HEARD THE INVESTIGATING DETECTIVE TESTIFY THAT WITNESS LINTON RICHEY MADE A STATEMENT TO A POLYGRAPH EXAMINER WHEN GIVING HIS STATEMENT CONCERNING THE

INCIDENT, AND THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR IN DENYING DEFENSE COUNSEL'S MOTION FOR A MISTRIAL.

II.     DEFENDANT WAS DENIED A FAIR TRIAL AFTER NUMEROUS POLICE OFFICERS, IN ANSWER TO A DIRECTED QUESTION FROM THE PROSECUTOR, TESTIFIED WHEN QUESTIONED FOLLOWING HIS ARREST, DEFENDANT REFUSED TO ANSWER ANY QUESTIONS AND ASSERTED HIS RIGHT TO COUNSEL, DESPITE THE TRIAL COURT'S PRIOR RULING THAT THE TESTIMONY WAS IMPERMISSIBLE.

III.    DEFENDANT WAS DENIED DUE PROCESS OF LAW AND THE RIGHT TO CONFRONTATION GUARANTEED BY THE UNITED STATES AND MICHIGAN CONSTITUTIONS WHERE, OVER DEFENSE COUNSEL OBJECTION, THE TRIAL COURT ADMITTED WITNESSES LINTON RICHEY'S AND DERRICK STRAYHORN'S PRELIMINARY EXAMINATION TESTIMONY INTO EVIDENCE AT TRIAL.

IV.     BECAUSE THE ISSUE OF CREDIBILITY WAS "CLOSELY DRAWN", THE COURT COMMITTED REVERSIBLE ERROR BY FAILING TO SUA SPONTE GIVE A CAUTIONARY INSTRUCTION ON THE UNRELIABILITY OF ACCOMPLICE TESTIMONY WITH REGARD TO THE PROSECUTION WITNESSES, LINTON RICHEY AND DERRICK STRAYHORN, IN VIOLATION OF DEFENDANT'S RIGHT TO A PROPERLY INSTRUCTED JURY.

V.      DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, WHERE COUNSEL FAILED TO REQUEST A CAUTIONARY INSTRUCTION ON THE UNRELIABILITY OF ACCOMPLICE TESTIMONY WITH RESPECT TO THE TESTIMONY OF LINTON RICHEY AND DERRICK STRAYHORN, AND FAILED TO MOVE TO SUPPRESS DEFENDANT'S CUSTODIAL STATEMENTS TO POLICE.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Strayhorn*, No. 246999, 2004 WL 120798 (Mich. Ct. App. July 20, 2004) (per curiam).

4.      Petitioner sought leave to appeal these five issues to the Michigan Supreme Court.

The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See*

*People v. Strayhorn*, 472 Mich. 878, 693 N.W.2d 821 (2005).

5.     Petitioner subsequently filed a motion for relief from judgment in the trial court

pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

> I.     MR. STRAYHORN WAS DENIED HIS FEDERAL AND STATE
> CONSTITUTIONAL RIGHTS TO CONFRONT THE WITNESSES
> AGAINST HIM.  MR. STRAYHORN IS ENTITLED TO A NEW TRIAL.
>
> A.     THE TRIAL COURT ALLOWED THE PROSECUTION TO
> ADMIT A RECORDING OF THE PRELIMINARY
> EXAMINATION "TESTIMONY" OF DERRICK STRAYHORN –
> MR. STRAYHORN'S CO-DEFENDANT AND BROTHER –
> WHICH ITSELF CONSISTED ALMOST EXCLUSIVELY OF A
> RECORDED POLICE INTERROGATION. MR. STRAYHORN'S
> CONFRONTATION RIGHTS WERE VIOLATED AND HE IS
> ENTITLED TO A NEW TRIAL.
>
> B.     MR. STRAYHORN'S CONFRONTATION RIGHTS WERE
> VIOLATED BY THE ADMISSION OF A RECORDING OF CO-
> DEFENDANT LINTON RICHEY'S PRELIMINARY
> EXAMINATION TESTIMONY.
>
> II.     THE PROSECUTION CONVICTED MR. STRAYHORN BASED UPON
> THE UNCROSS-EXAMINED, PRELIMINARY EXAMINATION
> TESTIMONY OF CO-DEFENDANTS DERRICK STRAYHORN AND
> LINTON RICHEY.  AFTER THE TRIAL, LINTON RICHEY WROTE A
> LETTER RECANTING HIS PRELIMINARY EXAMINATION
> TESTIMONY.   THIS NEW EVIDENCE OF MR. STRAYHORN'S
> INNOCENCE MERITS A NEW TRIAL.

On August 31, 2006, the trial court denied petitioner's motion for relief from judgment.  The

Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave

to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing

entitlement to relief under MCR 6.508(D)."  *People v. Strayhorn*, 480 Mich. 953, 741 N.W.2d 316

(2007); *People v. Strayhorn*, No. 276280 (Mich. Ct. App. June 21, 2007).

6.     Petitioner, through counsel, filed the instant application for a writ of habeas corpus

on January 24, 2008. As grounds for the writ of habeas corpus, he raises the confrontation, improper police testimony, ineffective assistance of counsel, and newly discovered evidence claims that he raised in the state courts.

7.      Respondent filed his answer on August 20, 2008. He contends that petitioner's claims are without merit, and that petitioner's claim relating to police officers testifying about his silence is barred by petitioner's procedural default in the state courts.

8.      Petitioner filed a reply to respondent's answer on October 2, 2008.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the September 28, 2001, robbery and murder of Sam Isabel. Judith McGee, the victim's girlfriend, testified that Isabel sold marijuana out of his house. At about 3:00 a.m., she was awakened by someone pointing a gun in her face and yelling "where's the money." The man left her room, and she heard arguing in the kitchen. Isabel said, "I gave you everything, why don't you just leave?" One man came through the hallway carrying a gun, and Isabel jumped in front of him and forearmed him in the jaw. Isabel fell backward, and the gun discharged. She heard sounds of a struggle, and the gun discharged twice more. Isabel told her to call 911, and she did. When she came back around the corner, Isabel was on the floor. The police arrived five minutes later. Judith McGee testified that her cell phones were missing, and she had the service turned off. There was activity on the accounts after they were stolen. *See* Trial Tr., dated 10/1/02, at 188-206. Christina McGee, Judith's daughter, testified that she was awakened by her door bursting open. She observed a man standing at the door in a mask. She heard three gunshots and heard Isabel yell out to her mother to call 911. *See id*. at 233-38.

Inkster Police Officer Christopher Kososki testified that he and his partner responded to the

scene. Upon his arrival, he observed the victim lying on the kitchen floor suffering from apparent gunshot wounds. He recovered one .45 caliber shell casing in the hallway, and one in the living room just north of the kitchen. He also recovered a .45 caliber round in the kitchen area. *See id*. at 8-15. Wayne County Assistant Medical Examiner Francisco Diaz performed an autopsy on Isabel's body and discovered two gunshot wounds. One entered the left chest under the arm, and traveled downward from left to right, perforating the diaphragm, stomach, bowel, and right kidney before exiting the lower right abdomen and re-entering the right thigh. The second entered the left upper thigh, traveled left to right and slightly downward, and exited the right buttock. Soot was found on the victim's chest, indicating that the chest shot was fired from less than 36 inches away. *See id*., dated 10/2/02, at 43-50. Michigan State Police Detective Lieutenant Shawn Stallworth, a Firearms Identification Examiner, testified that the two .45 caliber casings recovered from the home were fired from the same gun. *See id*. at 60-63.

Linton Richey and Derrick Strayhorn were not available at trial. After finding that the prosecution had exercised due diligence in attempting to locate and produce them for trial, *see id*., dated 10/1/02, at 52, the court allowed their preliminary examination testimonies to be read to the jury. *See id*, 10/2/02, at 70-71. Richey testified that he and Derrick Strayhorn went to a pre-homecoming party given by Romulus High School at a hotel. They left the party and met up with petitioner and someone named Al at around 9:30 or 10:00. They drove around in petitioner's van for an hour or two, and then proceeded to Kewadin Street in Inkster, two streets over from Manning, the street upon which the victim's home was located. Petitioner and Al, who were both armed with guns, got out of the van, leaving he and Derrick Strayhorn in the van. Petitioner and Al were gone for about five minutes; when they returned, they had the guns in their hands, along with some

marijuana in two sandwich bags and two cell phones. Petitioner drove to Derrick's mother's house. Richey and Derrick went to a gas station, while petitioner and Al went into the house. When Richey and Derrick returned, petitioner and Al were in Derrick's bedroom dividing up the marijuana. When asked where they had gotten the marijuana, petitioner and Al responded, "we robbed 'em." Petitioner was wearing blue jeans and a blue leather coat with a lion or tiger on the back and a black hooded sweatshirt. Al was wearing blue jeans and a black hooded sweatshirt. Richey was subjected to cross-examination at the preliminary examination. *See* Prelim. Exam., at 21-53.

Derrick Strayhorn, petitioner's brother, testified at the preliminary examination that he gave a sworn statement on October 26, 2001. In his statement he indicated that petitioner informed him that the shooting occurred when there was wrestling over the gun, and that petitioner thought that "Big Al" had pulled the trigger. During his preliminary examination testimony Strayhorn admitted to giving this statement, but denied that it was the truth. He claimed to have gotten the details of the crime from Detective Martin, not from petitioner. *See id.*, at 59-71.

Ronald Wade, a Court Officer for the 22nd District Court, testified that at a court hearing petitioner and Derrick communicated with each other, at which time petitioner told Derrick "[d]on't worry about it, little bro', you didn't see me there." Trial Tr., dated 10/2/02, at 78-79.

Sergeant Barry O'Bryan testified that he examined the scene and found footprints southbound from the house across a dirt field. He and Detective Martin spoke with petitioner after advising him of his constitutional rights. O'Bryan testified that he described a "scenario" to petitioner in which petitioner and the others went to Isabel's house to buy some marijuana, but did not intend to hurt anyone and wanted to get out of the house once shots were fired. Petitioner nodded his head in agreement with this scenario. Petitioner declined to make a written statement,

and the interview was terminated. On cross-examination by defense counsel, O'Bryan testified that petitioner terminated the interview by asking for an attorney. *See id*. at 84-112.

Sergeant Gregory Hill testified that he met with petitioner's parents on October 27, 2001, to show them a picture of a person who might be "Al." At that time petitioner's parents expressed concern to Hill about their son, and when he returned to the police station Hill allowed petitioner to phone his parents. After that call, petitioner indicated that he wished to speak with Sergeant Hill. Hill again advised petitioner of his rights, and petitioner made a verbal statement, followed by a written statement which was part narrative and part question-and-answer. In the statement, which was read into the record, petitioner indicated that he, Richey, and Al went to Isabel's house to get some marijuana. He further indicated that while inside the house he possessed the shotgun, which he fired three times. Al fired two shots, and was the one who shot Isabel. The men took marijuana and cell phones before fleeing. *See id*. at 113-34.

Detective Paul Martin, the officer in charge of the case, testified that activity on the cell phones taken from the house lead him to Linton Richey and Thomas Gibson as possible suspects. After speaking with these men, they were arrested, as was Derrick Strayhorn. Martin was present when petitioner was advised of his rights by Sergeant O'Bryan. After petitioner terminated the interview on October 26, 2001, Martin did not see petitioner until the following day, when he went to take a photograph of petitioner. At that time, petitioner indicated that he wanted to talk to Martin, but Martin declined based on petitioner's previous invocation of the right to counsel. Later that day, he went to the Strayhorn residence to show Derrick Strayhorn a photograph of a potential suspect. When he returned to the station, Sergeant Hill advised him that petitioner wanted to speak without an attorney present. Petitioner was again read his rights and was then interviewed. *See id*. at 160-

71. Following Detective Martin's testimony, the prosecution rested.

Christina Brown, petitioner's fianceé, testified on petitioner's behalf. She testified that on September 27, 2001, petitioner picked her and her daughter up and went to petitioner's mother's house to celebrate his mother's birthday. They arrived home at about 10:00 p.m. After arriving home, they ate dinner, watched television, and she went to bed as petitioner continued to watch television. *See id.*, dated 10/3/02, at 93-95.

Robert King testified that at a homecoming party on September 27, 2001, he saw Linton Richey, Derrick Strayhorn, and a man called "Big Al." Richey and Big Al were wearing black, and Derrick Strayhorn was wearing a sky blue sweater. He did not see petitioner with them at that time. However, on cross-examination, King conceded that he did not know the exact day or date that he saw Richey, Big Al, and Derrick Strayhorn together. He also testified that he saw them at Romulus High School, although the homecoming party was at a hotel. *See id.* at 100-06.

Lynn Strayhorn, Sr., petitioner's father, testified that on September 27, 2001, petitioner was at his home until sometime after 10:00 p.m., celebrating a birthday party. When he discovered that petitioner was being held in police custody, he spoke to the police officers investigating the case. He testified that the officers informed him that petitioner was facing the possibility of life imprisonment unless he cooperated, in which case he would receive a sentence of 3-7 years' imprisonment. *See id.*, at 109-16.

Petitioner testified at trial that on September 27, 2001, he went to his mother's house to celebrate her birthday. He went home later in the evening, watched television, and went to sleep. He denied meeting up with Linton Richey, Thomas Gibson, Big Al, or his brother on that night. He testified that after he was arrested, he was informed that an individual named Speedy had told the

police that petitioner and Al were inside the house. He was also told that he was going to spend the rest of his life in prison. When he denied any knowledge of the robbery, the officer grabbed him by the neck and pushed him into his seat. As he was speaking to his father on the telephone about obtaining a lawyer, Detective Martin snatched the phone away from him. He testified that he gave his statement only after being held for an extended period of time and being threatened by the officers. He wrote a statement based on facts supplied to him by the officers. Petitioner denied any involvement in the robbery. *See id.* at 135-53.

After closing arguments and instructions from the court, the jury deliberated and reached a verdict, finding petitioner guilty of second degree murder, armed robbery, assault with intent to rob while armed, felon in possession of a firearm, and possession of a firearm during the commission of a felony.

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing

legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Confrontation (Claim I)*

Petitioner first contends that he was denied his Sixth Amendment right to confront the witnesses against him when the trial court permitted the introduction of Derrick Strayhorn's and Linton Richey's testimony at the preliminary examination. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause is applicable to the states through the Fourteenth Amendment's Due

Process Clause. *See Pointer v. Texas*, 480 U.S. 400, 406 (1965). At the time of petitioner's trial, the standard governing the admissibility of hearsay statements under the Confrontation Clause was that set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980). In *Roberts*, the Court explained that the underlying purpose of the Confrontation Clause is similar to that of the hearsay rule, *i.e.*, to exclude unreliable, out-of-court statements in criminal proceedings. Thus, the Court reasoned:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts*, 448 U.S. at 66. As the Court explained in *Roberts*, reliability is inferred if the evidence was admitted pursuant to a firmly rooted hearsay exception. The theory behind this presumption is that these firmly rooted exceptions represent judgments, based on history and practice, that statements made in certain circumstances are inherently trustworthy such that the "adversarial testing [embodied in the Confrontation Clause] would add little to [their] reliability." *Idaho v. Wright*, 497 U.S. 805, 821 (1990). Thus, a hearsay exception is "firmly rooted" if it "rest[s] upon such solid foundations that admission of virtually any evidence within [the exception] comports with the substance of constitutional protection." *Roberts*, 448 U.S. at 66 (internal quotation omitted).

In *Crawford v. Washington*, 541 U.S. 36 (2004), decided shortly after petitioner's trial and while his appeal was pending, the Supreme Court abrogated *Roberts* as applied to testimonial hearsay statements. After surveying the historical development of the Confrontation Clause and the jurisprudence interpreting it, the Supreme Court concluded that, under a proper understanding of the Clause, "[t]estimonial statements of witnesses absent from trial have been admitted only where the

declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59. The Court then explained that *Roberts*'s allowance of testimonial statements based on their reliability, where there has been no opportunity for cross-examination of the declarant, departed from this proper understanding of the Confrontation Clause. *See id.* at 60-68. The Court therefore abrogated *Roberts* as applied to testimonial hearsay statements, concluding that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68-69. In *Crawford*, the Supreme Court left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Crawford*, 541 U.S. at 68. The Court did, however, provide some guidance. Specifically, the Court provided three possible "formulations of th[e] core class of 'testimonial' statements":

> [1] *ex parte* in-court testimony or its functional equivalent–that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; [2] extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [and] [3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51-52 (internal quotations and citations omitted). While the Court declined to adopt any of these three formulations, the Court noted that the term "testimonial," whatever else it may cover, "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68.

*Crawford* establishes a confrontation rule with respect to "testimonial" statements; it has no application to non-testimonial hearsay. The question therefore remains whether *Roberts* has any applicability to this case to the extent that the statements admitted at petitioner's trial were not

testimonial hearsay under *Crawford*. Because it is now clear that the Confrontation Clause is not at all concerned with non-testimonial hearsay, the Court should conclude that *Roberts* has no application here. In *Crawford*, the Court suggested, but did not definitively rule, that the Confrontation Clause is limited to regulating the introduction of testimonial hearsay, and has no application at all to the admission at trial of non-testimonial hearsay. The Court explained that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law–as does *Roberts*, and as would an approach that exempted all such statements from Confrontation Clause scrutiny altogether." *Crawford*, 541 U.S. at 68. Immediately following *Crawford*, the Courts concluded that *Roberts* remained applicable to non-testimonial hearsay, observing:

> [t]he lynchpin of the *Crawford* decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in *Crawford* applies only to the former category of statements. . . . [U]nless a particular hearsay statement qualifies as "testimonial," *Crawford* is inapplicable and *Roberts* still controls.

*United States v. Hendricks*, 395 F.3d 173, 179 (3d Cir. 2005); *see also*, *Horton v. Allen*, 370 F.3d 75, 83-84 (1st Cir. 2004); *United States v. Johnson*, 354 F. Supp. 2d 939, 964 (N.D. Iowa 2005); *United States v. Savoca*, 335 F. Supp. 2d 385, 391-92 (S.D.N.Y. 2004). Regardless of whether this reading of the *Crawford* dictum was correct, the Supreme Court has since clarified that the Confrontation Clause is simply not implicated by the introduction of non-testimonial hearsay. In *Davis v. Washington*, 547 U.S. 813 (2006), the Court explicitly addressed this question of "whether the Confrontation Clause applies only to testimonial hearsay," *id*. at 823, and in doing so abrogated *Roberts* in whole. The Court noted that the answer to this question was suggested in *Crawford*, when the *Crawford* decision explained that the Confrontation Clause focuses on "witnesses" who give "testimony." *Id*. at 823-24 (discussing *Crawford*, 541 U.S. at 51). The *Davis* Court explained

15

that "[a] limitation so clearly reflected in the text of the constitutional provision must fairly be said to mark out not merely its 'core,' but its perimeter." *Id.* at 824  Thus, where nontestimonial hearsay is at issue, the Confrontation Clause is not implicated at all, and need not be considered.  *See Whorton v. Bockting*, 549 U.S. 406, 420 (2007) ("Under *Roberts*, an out-of-court nontestimonial statement not subject to prior cross-examination could not be admitted without a judicial determination regarding reliability.  Under *Crawford*, on the other hand, the Confrontation Clause has no application to such statements and therefore permits their admission even if they lack indicia of reliability."); *United States v. Pugh*, 273 Fed. Appx. 449, 454 (6th Cir. 2008); *United States v. Feliz*, 467 F.3d 227, 231 (2d Cir. 2006).

    2.   *Analysis*

At the outset, there is no question that the preliminary examination testimony of Richey and Derrick Strayhorn constitutes testimonial hearsay under *Crawford*.  As explained above, although *Crawford* declined to provide a comprehensive definition of "testimonial," the Court held that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  *Crawford*, 541 U.S. at 68.  Thus, because Richey's and Derrick Strayhorn's preliminary examination testimony was testimonial hearsay under *Crawford*, its admission violated the Confrontation Clause unless (1) the witnesses were unavailable to testify, and (2) petitioner had the opportunity to cross-examine them.  *See Crawford*, 541 U.S. at 68 ("[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands . . . [both] unavailability and a prior opportunity for cross-examination."); *see also*, *United States v. McCaney*, 177 Fed. Appx. 704, 708 (9th Cir. 2006) ("In a criminal trial, prior testimony of a witness may be admitted against a defendant consistent with the Sixth Amendment's Confrontation Clause if (1) the

prosecution shows that the witness is unavailable, as it did here; and (2) the defendant had a prior opportunity to cross-examine the witness."); *United States v. Medina*, 167 Fed. Appx. 161, 166 (11th Cir. 2006) (same).

Petitioner asserts in his brief that "[t]he government never established that the two missing witnesses were in fact unavailable." Pet'r's Br., at 17. However, he points to no evidence, either in the record or outside the record, that calls into question the Michigan Court of Appeals's factual findings regarding the efforts expended by the prosecution in attempting to locate Richey and Derrick Strayhorn. Further, the record supports a finding that Richey and Derrick Strayhorn were indeed unavailable. In determining whether a witness is "unavailable," the definition of "unavailability" in Rule 804(a) is a useful guide. *See United States v. Tirado-Tirado*, 563 F.3d 117, 123 n.4 (5th Cir. 2009); *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1055 (6th Cir. 1983).[1] Under Rule 804(a), a witness is unavailable when the prosecution is "unable to procure [her] attendance . . . by process or other reasonable means." MICH. R. EVID. 804(a)(5); FED. R. EVID. 804(a)(5). In order for a witness to be "unavailable" for constitutional purposes, the proponent of the evidence must have undertaken " 'good faith efforts" ' to procure the subject witness's attendance. *See Roberts*, 448 U.S. at 74-75 ("'The lengths to which the prosecution must go to produce a witness ... is a question of reasonableness.' The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness."); *California v. Green*, 399 U.S. 149, 189 (1970); *Winn v. Renico*, 175 Fed. Appx. 728, 733 (6th Cir. 2006). The Confrontation Clause requires only a diligent, good faith effort to locate a

---

[1]Although *Crawford* altered the Confrontation Clause analysis, it did not alter the definition of "unavailability" for confrontation purposes, and pre-*Crawford* cases discussing unavailability remain good law. *See Tirado-Tirado*, 563 F.3d at 123 n.3.

17

witness; "herculean efforts are not constitutionally required." *Christian v. Rhoades*, 41 F.3d 461, 467 (9th Cir. 1994). The question whether a party's efforts have been made in good faith is a question of degree. *See Barber v. Page*, 390 U.S. 719, 724-25 (1968). Under the AEDPA, the issue is whether the state court's finding that the prosecution made a diligent, good faith effort was reasonable. *See Cooper v. McGrath*, 314 F. Supp. 2d 967, 985 (N.D. Cal. 2004); *Swanson v. Renico*, No. 00-10273-BC, 2004 WL 192953, at *9 (E.D. Mich. Jan. 22, 2004) (Lawson, J.).

Here, as the Michigan Court of Appeals explained, the prosecution attempted to personally serve subpoenas on Richey and Derrick Strayhorn several weeks before the trial. When this failed,

> a police officer went to their high school and talked to teachers and the principal. The officer learned that neither witness had attended school for nearly a year. The detective contacted possible places of employment and called multiple cell phone numbers received from various individuals. The detective also contacted various area agencies, including the Department of Corrections, local morgues, jails, local utility companies, the postal service, Herman Keifer, and the Family Independence Agency. The Michigan Street Enforcement Team was also involved in searching for the individuals.

*Strayhorn*, 2004 WL 1620798, at *2, slip op. at 3; *see also*, Trial Tr., dated 10/1/02, at 9-38. Petitioner points to nothing to call into question Detective Martin's testimony at the due diligence hearing regarding the steps taken to locate Derrick Strayhorn and Richey for trial. Rather, he contends only that these efforts were insufficient to constitute due diligence on the part of the prosecutor. However, the courts have repeatedly found these types of effort sufficient to constitute a diligent attempt to locate Floyd. *See Winn*, 175 Fed. Appx. at 739; *Pillette v. Berghuis*, 630 F. Supp. 2d 791, 804 (E.D. Mich. 2009) (Tarnow, J.). Thus, the court of appeals's conclusion that the prosecution had exercised due diligence in attempting to locate Derrick Strayhorn and Richey is not unreasonable.

The second question before the Court is whether petitioner had a prior opportunity to cross-

examine the witnesses at the preliminary examination. The Court should conclude that he did, and thus that his confrontation rights were not violated. Indeed, counsel extensively cross-examined both Richey and Derrick Strayhorn at the preliminary examination. From Derrick Strayhorn he elicited that the witness was intoxicated on the night of the robbery and had no recollection of the events of the evening. Rather, his statement to the police was based on information provided to him by Detective Martin, and was given only because the police coerced him into implicating defendant by threatening him with violence and life imprisonment. *See* Prelim. Exam. Tr., at 78-79. From Richey, counsel elicited that Richey was not charged in the robbery or murder, and that his story to the police had changed after he had been told that he was being investigated in connection with a murder. *See id*. at 48-49, 54-56. Counsel also impeached Richey with his prior statements to the police in which, contrary to his testimony at the preliminary examination, Richey did not mention seeing petitioner with a gun. *See id*. at 40-42. Thus, petitioner had adequate opportunity to cross-examine Richey and Derrick Strayhorn at the preliminary examination, and counsel took full advantage of that opportunity. Petitioner's arguments to the contrary notwithstanding, the courts have repeatedly held that this opportunity for cross-examination at the preliminary examination satisfies the requirements of the Confrontation Clause. *See Jackson v. Brown*, 513 F.3d 1057, 1083-84 (9th Cir. 2008); *Pillette*, 630 F. Supp. 2d at 804-05; *Stewart v. Booker*, No. 06-11741, 2008 WL 2478341, at *4 (E.D. Mich. June 17, 2008) (Luddington, J.); *United States v. Battle*, 473 F. Supp. 2d 1185, 1194-95 (S.D. Fla. 2006); *cf. Green*, 399 U.S. at 165 (witnesses' prior testimony at preliminary examination would have been admissible at trial if witness was unavailable because it was "given under circumstances closely approximating those that surround the typical trial," namely, the witness was under oath in a judicial proceeding, and was subjected to cross-examination by

counsel for the defendant); *Barber*, 390 U.S. at 725-726 (noting that although the preliminary hearing is ordinarily a less searching exploration into the merits of a case than a trial, "there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause where the witness is shown to be actually unavailable").[2]

Apart from his general claim that the preliminary examination testimony was insufficient to constitute a prior opportunity for cross-examination, petitioner raises two specific challenges to the admission of Richey's and Derrick Strayhorn's preliminary examination testimony. With respect to Richey, petitioner contends that he did not have an adequate opportunity to cross-examine Richey because it was unknown at that time that Richey was convicted of second degree murder in 2004. There are two problems with this argument, however. First, it is doubtful that this information would have been available to petitioner even at the time of trial. The criminal report attached by petitioner lists the date of Richey's sentencing as May 3, 2004. *See* Pet'r's Br., Ex. 10. Although the report does not list an offense date, the Michigan Department of Corrections's Offender Tracking Information System website lists Richey's date of offense as January 7, 2004. This was well after petitioner's trial in October 2002. Thus, the information would not have been available for cross-examination purposes even at trial. Second, it is doubtful that the information would have been a permissible basis for cross-examination. Under Michigan law, only convictions for crimes having

---

[2]Petitioner's reliance on *Vasquez v. Jones*, 496 F.3d 564 (6th Cir. 2007), is misplaced. In *Vasquez*, the court did not find a constitutional violation based on the introduction of the unavailable witness's preliminary examination testimony. Rather, the court found such a violation because the state trial court had barred any evidence at trial of the witness's crimes for purposes of impeachment and had limited cross-examination at the preliminary examination. Here, there was no similar limitation on counsel's ability to impeach the witnesses at the preliminary examination, nor did counsel attempt to offer additional impeachment evidence at trial.

as an element theft or false statement are admissible to impeach a witness. *See* MICH. R. EVID. 609(a). All other crimes are *per se* inadmissible. *See People v. Allen*, 429 Mich. 558, 605-06, 420 N.W.2d 499, 522 (1988). Thus, this conviction would not have been admissible for impeaching Richey at trial.

With respect to Derrick Strayhorn, petitioner contends that an additional confrontation problem arises because the preliminary examination included the introduction of a separate testimonial hearsay statement, namely, Derrick Strayhorn's statement to the police. This additional layer of testimonial hearsay, however, does not cause an additional confrontation problem. Had Derrick Strayhorn testified at trial, the introduction of his statement to the police would have raised no confrontation problems because he would have been present at trial and been subjected to cross-examination concerning the statement. Although the introduction of testimonial hearsay statements may violate the Confrontation Clause under *Crawford*, there is no Confrontation Clause violation where the declarant of the out-of-court statement is available for cross-examination at trial. As the Supreme Court has explained, "where the declarant is not absent, but is present to testify and to submit to cross examination, our cases, if anything, support the conclusion that the admission of his out of court statements does not create a confrontation clause problem." *Green*, 399 U.S. at 162; *see also*, *Crawford*, 541 U.S. at 59 n.9 ("[W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."). Thus, where a declarant's out-of-court statement is admitted, the question is whether defendant has the *opportunity* to cross-examine the declarant at trial. *See United States v. Spotted War Bonnett*, 933 F.2d 1471, 1474 (8th Cir. 1991);

*cf. Bugh v. Mitchell*, 329 F.3d 496, 509 (6th Cir. 2003).

Here, the same analysis holds. Derrick Strayhorn was present at the preliminary examination and subject to cross-examination concerning the statement he gave to the police. Indeed, counsel elicited from Derrick Strayhorn a denial of the contents of the statement. And, as explained above, Derrick Strayhorn's preliminary examination testimony was properly admitted under the Confrontation Clause. Thus, petitioner had the opportunity to cross-examine Derrick Strayhorn regarding his prior statement to the police which the Confrontation Clause demands. In these circumstances, the introduction of testimonial hearsay at the preliminary examination raises no additional confrontation issue not already subsumed by the analysis relating to the introduction of the preliminary examination testimony itself. *See Delgadillo v. Woodford*, 527 F.3d 919, 926 (9th Cir. 2008) (admission of witness's statement to police, testified to in preliminary examination testimony admitted at trial, did not violate *Crawford* where the witness was unavailable and subject to cross-examination regarding the statement at the preliminary examination). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his confrontation claims.

E.      *Police Testimony Regarding Invocation of Right to Counsel (Claim II)*

Petitioner next contends that the prosecution violated his Fifth Amendment privilege against self-incrimination when the police officer witnesses testified that he had invoked his right to counsel. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court considered the applicability of the Fifth Amendment's Self-Incrimination Clause to custodial interrogations by the police. The Court ruled that, in some circumstances, statements made while in custody can violate the Self-

Incrimination Clause even if the statement was otherwise "voluntary" under the Due Process Clause.

As the Court has more recently explained, the *Miranda* decision

> concluded that the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be "accorded his privilege under the Fifth Amendment . . . not to be compelled to incriminate himself." [*Miranda*, 384 U.S.] at 439. Accordingly, we laid down "concrete guidelines for law enforcement agencies and courts to follow." *Id.*, at 442. Those guidelines established that the admissibility in evidence of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with four warnings. These warnings (which have come to be known colloquially as "Miranda rights") are: a suspect "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of any attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so desires." *Id.*, at 479.

*Dickerson v. United States*, 530 U.S. 428, 435 (2000) (parallel citations omitted). The *Miranda* Court explained that if the suspect indicates that he wishes to remain silent, "the interrogation must cease." *Miranda*, 384 U.S. at 474. Similarly, if the suspect requests counsel "the interrogation must cease until an attorney is present." *Id.*; *see also*, *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). Although it has been characterized otherwise at times, the rule of *Miranda* is of federal constitutional dimension. *See Dickerson*, 530 U.S. at 438-40. Thus, claims based on the right to counsel at questioning recognized in *Miranda* are cognizable on habeas review. *See id.* at 439 n.3; *Thompson v. Keohane*, 516 U.S. 99, 107 n.5 (1995).

A corollary to the *Miranda* rule provides that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Doyle v. Ohio*, 426 U.S. 610, 618 (1976). Although the *Doyle* rule was established in the context of the invocation of *Miranda*'s right to remain silent, it is equally applicable to an invocation of the right to counsel. *See Wainwright v. Greenfield*, 474 U.S.

284, 295 n.13 (1986); *United States v. Kallin*, 50 F.3d 689, 693 (9th Cir. 1995); *United States v. Gilley*, 56 M.J. 113, 120 (C.A.A.F. 2001).

2. *Analysis*

Here, the circumstances of the trial compel the conclusion that the testimony regarding petitioner's invocation of his right to counsel did not violate the *Doyle* rule. During opening statement, petitioner's counsel set the stage for petitioner's defense, namely, that the police in general and Detective Martin in particular had focused on petitioner as a perpetrator. Once they did so, counsel argued, they failed to follow up on evidence, rather repeatedly questioning petitioner and ignoring his requests to speak with an attorney until he eventually confessed. *See* Trial Tr., dated 10/1/02, at 182-83. This theme also constituted the bulk of petitioner's own testimony and counsel's closing argument. *See id.*, dated 10/3/02, at 137-49; *id.*, dated 10/4/02, at 220-21. In response to this opening statement, the prosecutor informed the court of his intention to elicit from the police witnesses that petitioner had invoked his right to counsel and that invocation had been respected. *See id.*, dated 10/2/02, at 72-73. The trial court initially denied that request, *see id.* at 73, and the prosecutor did not elicit this information from Sergeant O'Bryan during direct examination. On cross-examination, however, petitioner's counsel elicited this information:

Q:    Okay. At this point, you get what you considered to be noticeable tears and sobs, is that right?

A:    Yes.

Q:    And then he tells you that he wants a lawyer, doesn't he?

A:    Yes, he does.

Q:    Okay. That's why this interview was terminated, isn't it?

A:    Yes. He indicated that he wanted an attorney.

*Id.* at 107. Following this exchange, on redirect examination the prosecutor asked Sergeant O'Bryan to clarify whether the interview ceased after petitioner requested an attorney. *See id.* at 111-12. During the direct examination of Detective Martin, following Sergeant O'Bryan's testimony, the prosecutor asked Martin whether he was present when petitioner requested counsel and Sergeant O'Bryan terminated the interview. *See id.* at 168-69. On direct examination of petitioner, petitioner's counsel again elicited information concerning his invocation of the right to counsel. *See id.*, dated 10/3/02, at 141. The prosecutor briefly cross-examined petitioner on whether the interview terminated when he requested counsel. *See id.* at 159-60. During closing argument, the prosecutor did not once mention petitioner's invocation of his right to counsel. *See id.*, dated 10/4/02, at 192-208. Rather, it was again defense counsel who first raised the matter, arguing that petitioner's requests for counsel went unheeded. *See id.* at 220-21. It was only after this argument that the prosecutor, on rebuttal, noted that the police had terminated the interview when petitioner requested counsel. *See id.* at 242-43.

Here, petitioner cannot show that the prosecution violated *Doyle* because the evidence of his invocation of the right to counsel was first elicited by his own counsel, and the testimony of Sergeant O'Bryan and Detective Martin was a fair response to petitioner's defense, which was that the police coerced him into confessing. *Doyle* prohibits the use of a defendant's silence or request for counsel as substantive evidence of guilt. Here, however, the testimony was not elicited to imply that petitioner was guilty of the crime charged. While a prosecutor must refrain from suggesting to the jury that a defendant hired an attorney to generate an alibi or get his "story straight," *Sizemore v. Fletcher*, 921 F.2d 667, 671 (6th Cir. 1990), habeas relief is not appropriate where the prosecutor's comment or a witness's testimony offers no suggestion that the petitioner's hiring of

an attorney establishes his or her guilt. *See Ridley v. Walter*, No. 99-35240, 1999 WL 1040089, at *1 (9th Cir. Nov. 5, 1999); *cf. United States v. Tocco*, 200 F.3d 401, 422-23 (6th Cir. 2000) (brief introduction of evidence that defendant had consulted an attorney did not warrant reversal because "the mere act of hiring an attorney is simply not probative of [the defendant's] guilt or innocence under the circumstances."). Viewed in context, it is clear that the testimony was not to imply that petitioner was guilty, but to explain the circumstances of the taking of the statement, and to rebut petitioner's claims about the coercive nature of the interview. In these circumstances, the testimony was not an improper comment on petitioner's invocation of his right to remain silent or to counsel. *See Noland v. French*, 134 F.3d 208, 216 (4th Cir. 1998) (habeas relief not warranted where prosecutor's comment on petitioner's invocation of his *Miranda* rights was used only to show the timing of certain events, not to suggest that petitioner was guilty of the crimes charged); *cf. United States v. Robinson*, 485 U.S. 25, 32 (1988) (the prohibition on comment by the prosecutor does not apply "where . . . the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel[.]" Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Ineffective Assistance of Counsel (Claim III)*

Petitioner next contends that his trial counsel rendered constitutionally ineffective assistance by failing to (1) request a cautionary instruction on the unreliability of accomplice testimony, and (2) move to suppress petitioner's statement to the police. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of

counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.    *Analysis*

a. *Failure to Request Accomplice Witness Instruction*

Petitioner contends that counsel was ineffective for failing to request an instruction

informing the jury that the testimony of his accomplices, Derrick Strayhorn and Linton Richey, should be judged more strictly than the testimony of the other witnesses. This claim fails for two reasons. First, the Michigan Court of Appeals determined, as a matter of state law, that an accomplice witness instruction was not warranted under state law. *See Strayhorn*, 2004 WL 1620798, at *3, slip op. at 4. In analyzing petitioner's ineffective assistance of counsel claims, this expression of state law is binding on this Court. *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999). *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action."). Counsel cannot be deemed ineffective for failing to request an instruction which was not appropriate under state law. *See Mitzel v. Tate*, 267 F.3d 524, 538 (6th Cir. 2001).

Second, petitioner cannot show that he was prejudiced by counsel's failure to request an accomplice witness instruction. Counsel argued extensively that the testimony of Derrick Strayhorn and Linton Richey was not worthy of belief because of the inconsistencies in their testimonies, and because they were involved in the crimes but escaped any punishment by testifying against petitioner. *See* Trial Tr., dated 10/3/02, at 216-17, 220, 225-26, 233-34. And the trial court gave a proper instruction to the jury on evaluating witness testimony in general. *See id.*, dated 10/4/02, at 11-13. In these circumstances, there is not a reasonable probability that the jury would have come to a different conclusion had an accomplice witness instruction been given. *See Krist v Foltz*, 804 F. 2d 944, 947 (6th Cir. 1986) (defense counsel's failure to request an accomplice instruction "insignificant" where the witness's "unsavory past and his motive for naming the defendant as his companion in crime were fully developed by counsel on cross-examination."); *see also*, *Blount v.*

*Battaglia*, 188 Fed. Appx. 515, 519 (7th Cir. 2006); *Green v. Ludwick*, No. 07-CV-10828, 2009 WL 1639742, at *1, *9 (E.D. Mich. June 10, 2009) (Steeh, J., adopting report of Komives, M.J.); *Grant v. Rivers,* 920 F. Supp. 769, 784 (E.D. Mich. 1996) (Gadola, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Failure to Seek Suppression of Petitioner's Statement

Petitioner also contends that his counsel was ineffective for failing to seek suppression of his statement to the police on the basis that it was coerced and taken in violation of his right to counsel under *Miranda*. To be entitled to habeas relief on this claim, petitioner must establish both "that had the motion been filed, there was a reasonable probability that the evidence would have been suppressed, and the outcome of the trial would have been different had the evidence been suppressed." *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994). Here, petitioner cannot show that had counsel moved to suppress his statements to the police, the motion would have been granted.

Petitioner and the police testified to significantly different versions of petitioner's interrogations and resulting statement. According to the police witnesses, petitioner was initially informed of his rights and waived those rights. Sergeant O'Bryan gave petitioner a scenario describing the crime, and petitioner nodded his head in agreement. Petitioner then requested counsel, at which time O'Bryan terminated the interview. The following day, after speaking with his father, petitioner informed the officers that he wished to speak with them. He was again read and waived his rights, after which he gave his statement. Petitioner, on the other hand, testified that he was threatened with life imprisonment, that his request for counsel were repeatedly ignored, and that he was at one point grabbed by the neck and pushed into his seat. There is no question that, under the police version of events, petitioner cannot show either that his statement was coerced or

taken in violation of his *Miranda* rights. Likewise, there is no question that, if petitioner's version of events is believed, there is at a least a reasonable probability that a motion to suppress his confession would have been granted. The problem before the Court is that, because petitioner did not move to suppress the statement, the trial court made no credibility findings. Nor did the trial court make any credibility findings after trial, because petitioner never moved for an evidentiary hearing or new trial in connection with his appeal.[3]

Nevertheless, the jury's finding of guilt provides an adequate basis for concluding that petitioner's version of events was not credible, and thus that a motion to suppress would not have been granted. Both versions of events were presented to the jury, and petitioner's counsel argued extensively that the jury should discount petitioner's statement and acquit him because the statement was coerced and not true. Had the jury accepted petitioner's version of events, they could not have convicted him. Thus, by finding petitioner guilty, the jury implicitly concluded that the police, and

---

[3]Nor may this Court conduct an evidentiary to make these credibility determinations. Pursuant to 28 U.S.C. § 2254(e)(2), "[i]f the applicant has failed to develop the factual basis of the a claim in State court proceedings, the court shall not hold an evidentiary hearing on a claim unless" one of two exceptions is met. 28 U.S.C. § 2254(e)(2). Here, an evidentiary hearing is not permissible because petitioner has "failed to develop the factual basis" of his ineffective assistance claim in the state courts. In *Michael Williams v. Taylor*, 529 U.S. 420 (2000), the Court explained that Congress' use of the term "'failed to develop' implies some lack of diligence[.]" *Id.* at 430. Thus, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 432. Under Michigan law, to develop the factual basis of his ineffective assistance of counsel claim petitioner was required to file a motion for a new trial and evidentiary hearing in the trial court or a motion to remand for that purpose in the court of appeals. *See People v. Ginther*, 390 Mich. 436, 443-44, 212 N.W.2d 922, 925 (1973); *People v. Gray*, 125 Mich. App. 482, 486, 336 N.W.2d 491, 493 (1983). Here, neither the court of appeals materials submitted by respondent nor the trial court docket sheet reflects the filing of a motion for an evidentiary hearing on any claim. He thus did not diligently attempt to develop the factual basis of his claim in state court, and is not entitled to an evidentiary hearing here. *See Michael Williams*, 529 U.S. at 437 (§ 2254(e)(2) diligence requires "that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law."); *Smith v. Bowersox*, 311 F.3d 915, 921 (8th Cir. 2002) (petitioner's "failure to comply with [state] law reflects a lack of diligence.").

not petitioner, were telling the truth concerning the circumstances of petitioner's confession. *See Calicut v. Quigley*, No. 05-CV-72334-DT, 2007 WL 37751, at *7 (E.D. Mich. Jan. 3, 2007) (Roberts, J.); *Blackwell v. State*, 512 S.E.2d 233, 235-36 (Ga. 1999).

In any event, even if the Court does not consider the jury's verdict an implicit credibility finding, it is petitioner's burden to demonstrate both that counsel's performance was deficient and that he was prejudiced by counsel's performance. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Here, the record contains no evidence with which to evaluate the adequacy of counsel's performance. For example, counsel may have chosen not to seek suppression of the statement in order to present his defense that the police focused on petitioner as the perpetrator and coerced not just petitioner, but also Derrick Strayhorn and Richey. This may have been a reasonable trial strategy under the circumstances. *Cf. Johnson v. Norris*, 537 F.3d 840, 848 (8th Cir. 2008); *Klein v. Helling*, 220 Fed. Appx. 651, 655 (9th Cir. 2007); *Squires v. Dugger*, 794 F. Supp. 1568, 1575 (M.D. Fla. 1992). Nor does the record contain any credibility findings which would allow this Court to assess the probability that a motion to suppress would have been granted. Petitioner has not sought an evidentiary hearing to develop these facts nor, as explained above, *see supra* note 3, may he be given one in light of his failure to develop the factual bases of his claim in the state courts. Petitioner therefore cannot carry his burden of demonstrating that counsel was deficient or that he was prejudiced by counsel's failure to call these witnesses. *See Hutchinson v. Bell*, 303 F.3d 720, 749-50 (6th Cir. 2002). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.     *Newly Discovered Evidence of Innocence (Claim IV)*

In his last claim petitioner contends that he is entitled to a new trial in light of newly discovered evidence of his innocence. Specifically, petitioner offers the affidavit of Linton Richey. In this affidavit, Richey recants his statement to the police and his preliminary examination testimony, averring that petitioner had no involvement in the crime and that the statement was coerced from him by the police. *See* Pet'r's Br., Ex. 8. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id*. at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief.

Further, petitioner's evidence falls far short of that necessary to establish that he is innocent. In *Herrera*, without elaborating further, the Court noted that even if a free-standing claim of innocence were cognizable on habeas review, "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Herrera*, 506 U.S. at 417. In *Schlup*, the Court elaborated on the showing required to establish "actual innocence" for purposes of overcoming a procedural bar to consideration of a constitutional claim. The Court explained that, to establish actual innocence, the petitioner must "show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schulup*, 513 U.S. at 327 (internal citation and quotation omitted).

The Supreme Court has also explained that a petitioner cannot establish his actual innocence merely be rehashing his innocence claims raised in the state courts and relying on the evidence adduced at trial. If he could, federal habeas review would become nothing more than a second trial on the merits, something the Supreme Court has repeatedly admonished the federal courts to avoid. *See Milton v. Wainwright*, 407 U.S. 371, 377 (1972) ("The writ of habeas corpus has limited scope; the federal courts do not sit to re-try state cases *de novo*[.]"). Thus, "to be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial." *Schlup*, 513 U.S. at 324. "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence").

Richey's affidavit fails to meet this high threshold. Long-delayed affidavits, like those offered here, which seeks to exonerate a petitioner and shift the blame for the crime to another person are "treated with a fair degree of skepticism." *Herrera v. Collins,* 506 U.S. 390, 423 (1993). Recanting affidavits and witnesses are likewise viewed with "extreme suspicion." *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991); *see also Byrd v. Collins,* 209 F.3d 486, 508 n. 16 (6th Cir. 2000). The affidavit submitted by petitioner does not explain why the witnesses waited nearly two years after petitioner's trial to come forward. *See Lewis v. Smith,* 110 Fed. Appx. 351, 355 (6th Cir. 2004) (proper for district court to reject as suspicious a witness' recanting affidavit made two years after petitioner's trial); *Olson v. United States*, 989 F.2d 229, 231 (7th Cir. 1993)(recantation more than four years after trial testimony was dubious). Furthermore, it is highly suspicious that the recantation came years after Richey had received the supposed benefit from testifying against petitioner–leniency with respect to his own crimes–and had nothing to lose by recanting. *See Tirado v. Senkowski,* 367 F. Supp. 2d 477, 489 (W.D.N.Y. 2005). Finally, as noted above, Richey is currently serving an 8-15 year term of imprisonment for second degree murder, reducing the threat of criminal penalty or other sanction which would attach to his statement to render it credible. *Cf. In re Byrd*, 269 F.3d 561, 574 (6th Cir. 2001).[4] Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

---

[4] Indeed, Richey's affidavit declares only that the statements therein "are true to the best of my information, knowledge and belief." The affidavit is neither sworn to nor declared to be true under penalty of perjury. *See* 28 U.S.C. § 1746.

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court

must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

If the Court accepts the foregoing recommendation, the Court should grant in part and deny in part a certificate of appealability. Specifically, the Court should grant a certificate of appealability with respect to petitioner's confrontation claims, but deny the certificate in all other respects.

With respect to the confrontation claims, it cannot be said that my recommended resolution of the claims is not reasonably debatable. Although the caselaw which exists supports the conclusion that a prior opportunity for cross-examination at the preliminary examination satisfies *Crawford*, there is a relative dearth of caselaw on the matter, and the caselaw which does exist does not define the precise scope of cross-examination at a prior hearing sufficient to satisfy the Confrontation Clause as explicated by *Crawford*, and there is no binding precedent from the Sixth Circuit on this issue. Further, with respect to Derrick Strayhorn's preliminary examination testimony, there is the additional "hearsay-within-hearsay" problem which appears to have been

dealt with only briefly by one court of appeals. In light of the paucity of caselaw on this subject, the Court should conclude that petitioner is entitled to a certificate of appealability with respect to his confrontation claims.

With respect to the remaining claims, however, the Courts should conclude that my proposed determination is not reasonably debatable. Petitioner's claim relating to testimony about his invocation of his right to counsel is plainly meritless in light of his own counsel's first broaching the subject, and in light of the fact that the prosecution did not use petitioner's invocation of his right to counsel as substantive evidence of guilt, but to rebut petitioner's claim that the police had not respected his invocation of the right. The resolution of petitioner's ineffective assistance of counsel claims is not reasonable debatable in light of the Michigan Court of Appeals's conclusion that an accomplice witness instruction was not warranted under state law and petitioner's failure to develop a factual record to support his claim that counsel was ineffective for failing to move to suppress his statement to the police. Finally, petitioner's newly discovered evidence claim is plainly meritless, as the existence of newly discovered evidence is not a basis for habeas relief. Accordingly, the Court should deny a certificate of appealability with respect to these claims.

I.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should grant a certificate of appealability on petitioner's confrontation claims, but deny a certificate with respect to petitioner's remaining claims.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                    s/Paul J. Komives
                                    PAUL J. KOMIVES
                                    UNITED STATES MAGISTRATE JUDGE

Dated: 4/12/10


> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record  by electronic means or U.S. Mail on April 12, 2010.
>
>                    s/Eddrey Butts
>                    Case Manager

38